IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **SHERRY L. MENDOZA,** <br> 2012 Edgemere Court <br> Slidell, Louisiana 70461, <br><br> **Plaintiff,** <br><br> vs. <br><br> **The J.M. Smucker Company**, <br> One Strawberry Lane <br> Orville, Ohio 44667, <br><br> c/o CT Corporation System <br> 4400 Easton Commons Way, Suite 125 <br> Columbus, Ohio 43219 <br><br> **Defendant.** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CASE NO. _____ <br><br> JUDGE _____ <br><br><br><br> **COMPLAINT** <br><br> **(JURY DEMAND ENDORSED HEREON)** |

Plaintiff, Sherry L. Mendoza ("Mendoza" or "Plaintiff"), by and through her undersigned counsel, for her Complaint against Defendant, The J.M. Smucker Company ("Smucker: or "Defendant"), for violations of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 USC § 2000e, et seq., Section 102 of the Americans With Disabilities Act (ADA), 42 USC § 12112(d), the Ohio Civil Rights Statute, Chapter 4112 of the Ohio Revised Code, and the Louisiana Employment Discrimination Law (LEDL) (La. R.S. 23:301, et seq.) and states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff is and was at all times relevant to this action a resident of Slidell, Louisiana, who was employed with Defendant for over 10 years.

2. Plaintiff is a "person" and an "employee" as those terms are defined in Chapter 4112 of the Ohio Revised Code, the LEDL, Title VII, and the ADA.

3. The J.M. Smucker Company is and was at all relevant times an Ohio for-profit corporation, with its principal place of business in Orville, Wayne County, Ohio and conducts business throughout the state of Ohio.

4. Defendant is, and was at all times relevant herein, an "employer," as that term is defined in Chapter 4112 of the Ohio Revised Code, the LEDL, Title VII and the ADA.

5. The conduct, injuries and damages that gave rise to Plaintiff's claims herein occurred in Louisiana and Wayne County, Ohio.

6. Plaintiff's damages exceed $75,000.

7. Venue and jurisdiction are proper in this Court.

8. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1332, 1343, 1367 and 42 U.S.C. § 2000e-5 (f)(3).

9. All jurisdictional prerequisites and administrative exhaustion requirements have been met under Chapter 4112 of the Ohio Revised Code, the LEDL, Title VII, and the ADA, and this case is timely brought with all claims properly before this Court.

10. Within 300 days of the conduct alleged herein, Mendoza filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No461-2022-00540 against Smucker.

11. On October 14, 2022, the EEOC issued a Dismissal and Notice of Rights letter to Mendoza, a true and accurate copy of which is attached hereto as **Exhibit 1**.

12. This Complaint is timely filed on or before the filing deadline(s) set forth in the Dismissal and Notice of Rights and/or under Chapter 4112 of the Ohio Revised Code, the LEDL, Title VII and the ADA, and Plaintiff has exhausted all administrative remedies pursuant to Chapter 4112 of the Ohio Revised Code, Title VII and the ADA.

**FACTUAL BACKGROUND**

13. Plaintiff restates, reasserts, and re-alleges the foregoing statements, assertions, and allegations as if fully rewritten herein.

14. Plaintiff was and is a devout Christian, an avowed disciple of Jesus Christ, and a member of The New Orleans Church, a Bible-based non-denominational, Christian church affiliated with the International Churches of Christ.

15. Consistent with her religious beliefs and biblical teachings, Plaintiff is against abortion and sincerely believes that receiving a COVID-19 vaccine derived from aborted fetal stem cell lines would violate her pro-life beliefs, conscience and religious faith and the desire to maintain bodily integrity and purity.

16. Plaintiff has not knowingly been vaccinated with any vaccine derived from aborted fetal cell line technology since at least 2012.

17. Smucker employed Plaintiff for over 10 years until her wrongful termination on December 15, 2021.

18. At the time of her unlawful termination, Plaintiff held the position Senior Manager, TSO Process Engineering at Smucker's plant in New Orleans, Louisiana.

19. At all times relevant to this Complaint, Plaintiff was qualified for the positions that she held while employed with Smucker and successfully performed the duties and responsibilities for those positions.

20. Between March 2020 and her termination, Plaintiff worked both remotely from her home and in-person at Smucker facilities in Louisiana, spending the majority of her working time in-person at her office. And throughout the pandemic, Plaintiff abided by all social distancing requirements and mandates imposed by state and local governments and Smucker.

21. On or about July 28, 2021, the Plant Engineer and human resources instituted a policy and rule that individuals vaccinated against COVID-19, who disclosed their vaccinated status to the company by August 8, 2021, they would no longer be required to meet physical social distancing requirements in the offices where Plaintiff worked. However, unvaccinated individuals or employees who refused to disclose their vaccination status to human resources would be required to relocate their desks to segregated and specified area in the office designated for non-vaccinated staff members.

22. Notably, in an interview with CNN on August 5, 2021, US Centers For Disease Control and Prevention Director, Dr. Rochelle Walensky, stated that fully vaccinated people who get a breakthrough infection can transmit the virus and that such persons can carry essentially the same amount of virus as an unvaccinated person allowing them to transmit the virus "just like an unvaccinated person." *See* https://www.cnn.com/2021/08/05/health/us-coronavirus-thursday/index.html

23. Yet, Smucker began demanding every vaccinated employee to show their vaccination card to the company. This request was reiterated in an email from the plant's HR manager, again telling employees to show their vaccination cards to HR.

24. Because she was not vaccinated or refused to disclose her vaccination status, Plaintiff was forced to relocate her desk the area of the office designated for non-vaccinated workers (or those who wished to maintain medical privacy), away from her coworkers. This segregated seating arrangement implicitly conveyed Plaintiff's private health information to everyone else on staff that Plaintiff and others in the designated area were not vaccinated, a fact Smucker was required to keep confidential.

25. On or about September 21, 2021, Defendant issued COVID-19 expectations with attached FAQs. This communication again stated the requirement that fully vaccinated employees in Corporate, Sales, and remote locations must verify their vaccination status with HR. Vaccination dates were set for all levels of the company and beginning on December 1, 2021, only vaccinated employees, contractors, or visitors or those with an approved exemption would be permitted to enter the corporate offices, travel for work, or receive quarantine pay.

26. On October 11, 2021, Defendant announced a policy requiring all salaried employees, including Plaintiff, to be vaccinated against COVID-19 as a condition of their continued employment, with requests for accommodation considered for legally protected medical or religious exemptions.

27. Under Defendant's vaccination policy, salaried employees were required to be fully vaccinated by December 15, 2021, or their employment with the Company would be terminated as of December 16, 2021, and not eligible for severance.

28. On or about October 13, 2021, Plaintiff submitted a written request for a religious exemption from Smucker's vaccination policy explaining her sincerely held religious beliefs and that she objected to the then available COVID-19 vaccinations on the grounds that they were developed from fetal cell lines of aborted fetuses and that receiving such a vaccine would conflict with her Christian faith and conscience against consecrating her body with impure substances. A copy of Plaintiff's request for accommodation is attached hereto as **Exhibit 2**.

29. On October 15, November 1 and 18 and December 1, 2021, Plaintiff was reminded to verify her vaccination status with human resources.

30. On November 16, 2021, Plaintiff contacted human resources because she had not received a response to her request for religious accommodation and had not been interviewed.

31. On November 17, 2021, Plaintiff participated in a conference call with Smucker's human resources personnel, Amanda Iterald and Amy Tucker, the alleged purpose of which was to gather additional information about the written religious exemption request that Plaintiff had submitted.

32. During that call, Ms. Tucker explained the company wanted to have a conversation with each employee who submitted a religious exemption request, to make sure they were asking the same questions that had been posed to everyone else submitting religious accommodation requests. Ms. Tucker further said they were trying to get the same type of information from everybody based on the questions, and the information provided would be submitted to a team comprised of staff from employee relations, legal and senior leadership, who would be making a decision about Plaintiff's request for religious exemption to the company's COVID-19 vaccine mandate.

33. Ms. Tucker asked Plaintiff to identify her religion or religious belief, to share examples of how her faith impacts her everyday live, how long she had adhered to her religious belief, whether Plaintiff had previously received any prior vaccines, whether Plaintiff had received a flu shot, if Plaintiff's children had been vaccinated, whether Plaintiff avoided other medications or medicines based on her belief, whether Plaintiff had ever requested a religious exemption before, and whether Plaintiff had any other information to share.

34. Smucker's inquiries into the sincerity of Plaintiff's religious beliefs were not individualized and were unreasonable and contrary to law.

35. EEOC guidance is clear that an employee's newly adopted or inconsistently observed practices may nevertheless be sincerely held. Further, according to the EEOC, an employer should not assume that an employee is insincere simply because some of the employee's

6

practices deviate from the commonly followed tenets of the employee's religion, or because the employee adheres to some common practices but not others. No one factor or consideration is determinative, and employers should evaluate religious objections on an individual basis.

36. Smucker lacked an objective basis for questioning either the religious nature or the sincerity of Plaintiff's belief and had no justification for making the broad inquires that it did.

37. Plaintiff answered Ms. Tucker's questions truthfully and completely as it related to her religious beliefs. Plaintiff further expressed that she had reviewed EEOC guidance regarding Title VII religious accommodation requests, that she believed placing employees on unpaid leave as an accommodation was discriminatory in violation of Title VII, and that the company had placed her in a circumstance that forced her to choose between her God and her job.

38. On November 18, 2021, Plaintiff sent an email to Ms. Tucker and Ms. Iterald thanking them for the discussion and keeping a written record. Later that day, Plaintiff received an email denying her accommodation request and indicating that she must be vaccinated by December 15, 2021. The denial email indicated Plaintiff could email additional information to support her request if she wished.

39. On December 8, 2021, Plaintiff appealed the denial of her religious accommodation request, attaching a written letter from her church leader and supplying links to further information supporting her request for accommodation, as she had been invited to. She further identified accommodations that she would be open to that would not impose any undue hardship on the company and asked the company to provide an explanation if any of the suggested accommodations would impose such a burden.

40. Plaintiff's appeal letter was never acknowledged, and she received no response.

41. Smucker failed to consider or discuss with Plaintiff any reasonable accommodations for her sincerely held religious beliefs.

42. On December 13, 2021, Plaintiff participated in a meeting with her direct manager regarding a transition plan with respect to her duties and he indicated he was willing to provide Plaintiff with a glowing recommendation. That same day she was notified to return her company-issued computer.

43. On December 14, 2021, Plaintiff received an invitation from her manager inviting her to a meeting and "exit discussion" on December 15, 2021 and indicating that she would need to return her laptop, badge and credit card.

44. On December 15, 2021, Plaintiff attended the meeting with her manager, during which her employment was terminated, and she was informed that she could return to work if she was vaccinated within 30 days. Plaintiff requested written confirmation of her termination, but her requests were refused.

45. On December 16, 2021, Plaintiff reported to work prepared to work until such time as she was provided with a termination letter confirming her employment had ended. Later that day, she received a copy of the termination letter attached hereto as **Exhibit 3**.

46. Smucker unlawfully applied its vaccination requirement to employees in a way that treated employees differently based on their religious beliefs.

47. For example, Smucker granted religious exemptions to one or more employee(s) similarly situated to and working with Plaintiff, who shared the same Christian beliefs and also held sincere religious objections to the COVID-19 vaccines as Plaintiff—that the vaccines had been developed using aborted fetal cell lines.

48. Smucker failed to engage in a flexible, individualized interactive process with Plaintiff.

49. Accommodating Plaintiff by allowing her to continue to observe social distancing measures or regular testing would **not** have imposed significant difficulty or expense much less more than a minimal cost or burden on Smucker.

50. Smucker relied upon speculative, hypothetical hardship in evaluating Plaintiff's religious objection and request for accommodation.

51. Smucker terminated Plaintiff's employment because she sought a religious exemption from the company's mandatory vaccination policy and because she complained about discriminatory practices relative to the accommodation process.

52. Smucker did not terminate Plaintiff for any legitimate reason related to her work performance, her alleged lack of adherence to any published company policy or practice, or for just cause.

53. During her employment with Smucker, Plaintiff was subjected to discriminatory, retaliatory, and disparate treatment as compared to her similarly situated peers based on her religious beliefs.

54. At or around the time of Plaintiff's termination, Smucker had open positions for which Plaintiff was qualified or eligible to receive.

55. Smucker refused to reinstate, rehire, transfer, or reassign Plaintiff to available open positions for which she was qualified because she sought a religious exemption from the company's vaccine policy and because she opposed unlawful discrimination.

## COUNT ONE
### (Religious Discrimination / Failure to Accommodate
### in Violation of Ohio Revised Code Chapter 4112, the LEDL and Title VII)

56. Plaintiff restates, reasserts, and re-alleges the foregoing statements, assertions, and allegations as if fully rewritten herein.

57. Plaintiff was qualified for her position and her performance in that position met or exceeded company objectives.

58. Plaintiff holds sincere religious beliefs that preclude her from receiving a COVID-19 vaccine.

59. Plaintiff informed Smucker of those beliefs and requested religious accommodations from the company's vaccine mandate.

60. Smucker failed to engage in good faith in the interactive process with Plaintiff regarding her request for religious accommodations and instead denied her request and terminated her employment.

61. Smucker falsely claimed to the EEOC that Plaintiff refused to cooperate with Smucker or answer basic questions about the sincerity and nature of her religious beliefs, ignoring the record of her interview with HR and her subsequent appeal supplying further support for her exemption.

62. Smucker failed to provide Plaintiff with reasonable accommodations for her religious beliefs, terminating her employment, and thereby discriminated against her because of his religious beliefs.

63. In terminating her employment, Defendant unlawfully discriminated against Plaintiff because of her religious beliefs, her request for accommodation, and her objection to unlawful and discriminatory employment practices.

64. Smucker's discrimination, failure to provide religious accommodations, and retaliation, has harmed and will continue to harm Plaintiff.

65. As a direct and proximate result of Defendant's failure to accommodate Plaintiff and its discriminatory actions, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including without limitation, pain and suffering, lost compensation, incentives, bonuses, benefits, and other privileges and conditions of employment.

66. Defendant's conduct constitutes an unlawful discriminatory practice for which they are liable for damages to Plaintiff under Title VII and applicable state civil rights statutes.

67. Defendant's actions against Plaintiff were unlawful, intentional and willful, and undertaken with reckless or malicious indifference to her protected rights and render Defendant liable to Plaintiff for past and future economic and non-economic compensatory and punitive damages, as well as attorney's fees, costs, and any equitable relief that this Court deems appropriate.

**COUNT TWO**
**(Religious Discrimination / Retaliation**
**in Violation of Ohio Revised Code Chapter 4112, LERD, and Title VII)**

68. Plaintiff restates, reasserts, and re-alleges the foregoing statements, assertions, and allegations as if fully rewritten herein.

69. Plaintiff engaged in a protected activity when she requested a religious exemption accommodation from Smucker's vaccination policy and by opposing unlawful discrimination during that process, including that Smucker's plan to provide unpaid leave was discriminatory and not a reasonable accommodation.

70. Smucker ignored Plaintiff's complaints of religious discrimination and her appeal letter.

71. In denying Plaintiff's request for accommodation, Smucker responded that it would terminate her employment if she did not get vaccinated, presenting her with the false choice between vaccination in contravention of her sincerely held religious beliefs and conscience or the termination of her employment.

72. Smucker denied Plaintiff's exemption even as it later conceded to the EEOC that many of the requests for religious accommodations it received were legitimate and that it had granted nearly 80% of the requests for religious exemption that it received.

73. Plaintiff's religious beliefs and protected activity were the causes of Smucker's termination of her employment.

74. Defendant's disparate treatment of religious accommodation requests, in accommodating some but not all religious accommodation requests based on substantially the same faith-based beliefs, confirms its hostility to Plaintiff's request for religious accommodation.

75. By retaliating against Plaintiff for engaging in protected activity, Smucker violated Chapter 4112, the LERD, and Title VII, and such violations harmed and continue to harm Plaintiff.

76. Defendant's conduct constitutes unlawful discriminatory and retaliatory practices for which it is liable for damages to Plaintiff.

77. Defendant's actions against Plaintiff were unlawful, intentional and willful, and undertaken with reckless or malicious indifference to her protected rights and render Defendant liable to Plaintiff for past and future economic and non-economic compensatory and punitive damages, as well as attorney's fees, costs, and any equitable relief that this Court deems appropriate.

**COUNT THREE**
**(Wrongful Disclosure of Confidential Medical Information**
**in Violation of the ADA, 42 U.S.C. § 12112(d)(1), (d)(3)(B), (d)(4))**

78. Plaintiff restates, reasserts, and re-alleges the foregoing statements, assertions, and allegations as if fully rewritten herein.

79. The ADA prohibits medical examinations and inquiries unless such examination or inquiry is shown to be job-related and consistent with business necessity.

80. Further, the ADA provides that information obtained during an employer's medical inquiry or examination regarding the medical condition or history of any employee to be maintained in separate medical files and treated as confidential with limited exceptions.

81. Smucker's inquiry into Plaintiff's COVID-19 vaccination status as well as her past medical history respecting other vaccines and medications was a prohibited medical inquiry.

82. Further, Smucker's forced relocation and segregation of Plaintiff's work site to an area of the office designated for unvaccinated employees divulged confidential medical facts and information to her coworkers, in violation of Plaintiff's privacy rights under the ADA.

83. Plaintiffs' medical information was disclosed and publicized by Smucker rather than treated as confidential and no exception found in the ADA permitted that disclosure.

84. Smucker denied Plaintiff's request for religious accommodation, in part, because Plaintiff objected to disclosing her confidential medical history during the interview with human resources and then falsely claimed that she had not cooperated in its impermissible inquiries.

85. As a result of Defendant's actions and the unlawful disclosure of her confidential medical information, Plaintiff suffered tangible injuries, including the loss of her employment, economic losses, non-economic losses, ridicule, shame, and emotional distress.

**PRAYER FOR RELIEF**

Plaintiff, Sherry Mendoza, seeks an amount in excess of $75,000.00 to fully, fairly, and justly compensate her for her injury, damage, and loss, and respectfully prays that this Court enter judgment in her favor and award her compensatory damages, consequential damages, incidental damages, back pay, front pay, lost benefits, lost stock options, past and future non-economic damages, punitive damages, liquidated damages, pre- and post-judgment interest, all reasonable attorney's fees, witness fees, expert fees, costs, and expenses, and any additional equitable relief that the Court deems appropriate.

Respectfully submitted,

/s/ *Christopher A. Holecek*
Christopher A. Holecek (0040840)
Jay R. Carson (0068526)
WEGMAN HESSLER LPA
6055 Rockside Woods Boulevard, Suite 200
Cleveland, Ohio 44131
Telephone: (216) 642-3342
Facsimile: (216) 642-8826
E-Mail: caholecek@wegmanlaw.com
         jrcarson@wegmanlaw.com
*Attorneys for Plaintiff, Sherry Mendoza*

**JURY DEMAND**

Plaintiff hereby demands a trial by Jury on all issues so triable pursuant to FRCP 38(b).

/s/ *Christopher A. Holecek*
Christopher A. Holecek (0040840)
WEGMAN HESSLER
*One of the Attorneys for Plaintiff, Sherry Mendoza*